118.13.89 Bennett Richard v. Westcott Chalmers Counsel, you may proceed. Your Honor, I am the attorney-general of Congress for the plaintiff, Utahn Richard. May I reserve five minutes for the program? You have five minutes in the fly. The question before the Court was the Commission's decision against the manifesto evidence. Specifically, the Commission had already found the elements of accident causation, so revealing solely that the issue of the element is future surgery. In other words, the Commission found an accident and found causation that then denied the plaintiff surgery. So in order to manifest weight, does the evidence in the record compel an opposite conclusion? And you've got one doctor in your favor, and then the respondent has Dr. Salahi and Dr. Troy. On the issue of surgery, Your Honor, we have a treating physician and we also have a Section 12 amendment, Dr. Troy, that says he refers to Dr. Carlisle on the issue of surgery. And so when looking at the element of surgery, we have Dr. Troy, the treating physician, Dr. Carlisle, and then I know the arbitrator also avoided surgery. It's not a dispute as to whether he needs surgery. The dispute is whether his current condition of well-being is causally related to the accident. Correct. Which doctors do you have that connected causation? Well, the Commission did find causation based on the treating physician and based on Dr. Salahi. But then what we're concerned, and that's not on appeal, so there's some injuries causally related, whether the medical evidence is proven. If that's what we have specifically, again, Dr. Carlisle. What did he need surgery for? It's a cervical fusion pre-level at C4 to C6. And two of the doctors, Salahi and Troy, believed that it was a natural progression of a degenerative issue. Did they not? Incorrect insofar as Dr. Salahi did say there was an accident, which the Commission adopted. But then Dr. Salahi said instead of surgery, he would recommend an alternative procedure. So we did, so the Commission did that. So the two section called standards, one said surgery, but not causally related. But we already found, based on the Commission's decision, there's causally related. Wait a minute, wait a minute. Because the Commission found a causal relationship does not mean that they found a causal relationship between all of his conditions of ill-being. The question is, is the condition of ill-being, the necessitated surgery, causally related to the accident? Now, clearly, Troy said it was not, that it was related to a degenerative process. What did Salahi say? Salahi said that he looked at the MRI and the plan and said there is a diagnosis related to the accident. And the only difference is he said instead of surgery, he would recommend an alternative procedure. So now, as we stand here today, we already found that there's a diagnosis related. We met the element of causation that's not on appeal. They responded to it. I think you don't get what I'm trying to say to you. He may have, there may have been some causal relationship between some condition that he suffered from in the accident, but the question is, is the condition that required surgery causally related to the accident? You seem to think as soon as they found causation, they found causation for everything. Well, I think what the Commission did, I mean, certainly it's undisputed that the treaty position clearly said surgery causally related. Then we get into the two doctors, one of them saying that he does recommend surgery, but the MRI that he thought was degenerative. And not related to the accident. Correct. And what did Salahi say? Salahi said that he does believe the condition to be related. However, he would recommend an alternative procedure. What condition did he say was related? He said that the type of cervical C4, C6 herniation wasn't related to the accident, that he didn't think surgery was in line. So there is a big difference between, and these are the defendants. He said the only thing that was wrong with your client was that he had mild stenosis and that he appeared to be exaggerating his symptoms. Well, I'll take it in terms of the Commission's decision on Dr. Salahi. The Commission says on page three that, according to Dr. Salahi, that Dr. Salahi recommended the condition to go through a functional capacity evaluation, indicating that Dr. Salahi did in the case recommend the treatment. That was very clear. Instead of the surgery, he recommended a functional capacity evaluation. He said your client didn't need surgery and that physical therapy was what he would recommend. Right. In the Commission's decision, it says that Dr. Salahi recommends the functional capacity evaluation to see if there are any permanent restrictions. So if we get back to the element, you know, as a clinic, So you're saying factually the Commission got that wrong? I'm saying that based on the case law and the manifest way of the evidence standard and given the fact that causation and accident to some level is already established and we're now just analyzing the case, did planning need as burdened proof on surgery? If we analyze all those elements separately, now we're saying we're disregarding a treatment and saying surgery. We're disregarding Dr. Troy, regardless of his opinion on causation, who recommended surgery. Well, how are we disregarding Troy? Wasn't it his opinion that the claimant was exaggerating his symptoms as his complaints did not correlate with Troy's findings during the physical examination? Did he say that? Dr. Troy did say that his opinion on causation was often disregarded by the Commission and that's not disturbed because that's not a field of cross-appeal. So, again, it's important to remember that the Commission, the only thing on the field is the findings with respect to medical evidence. Well, at the end of the day, is it enough for the Commission to weigh the credibility of the testimony and the weight to be given? And they determined Salahi and Troy's opinions were entitled to more weight than the claimant's experts. So tell us why they can't do that. They absolutely can. And that's what's interesting about our case. We're not asking the Court today to re-examine the evidence or judge credibility. We're saying take the case on its face, bullet points. At this point, we have a treated physician saying surgery. A defendant in Section 12 is now saying surgery. An arbitrator is saying surgery. The claimant was the only witness at trial. Worked there 20 years. Still works there to this day saying surgery. So we have all of these things leading to the conclusion surgery. So our question is then, if this injured worker can't get a surgery, what hope is there for any injured worker? Well, was the surgery, as Justice Hoffman keeps asking you, necessitated by the work accident, or was it the result of natural progression of degenerative issues, as Salahi and Troy believed? Well, the Commission clearly said that there was an accident caused by the work incident. All right. So there's an accident. Okay. Sorry? There's an accident. Okay. Correct. There's an accident. It's clearly the Commission's decision. So the Commission had some things we're in agreement with. The Commission clearly said there was an accident. So anything degenerative is now irrelevant. Whoa, whoa, whoa, whoa. Why is it irrelevant? If the Commission already found there was an accident. Just because there's an accident, any malady the guy suffers from after the date of the accident is causally related? Is that your theory? No, Your Honor. Then what is your theory? My theory is that we're here on appeal, and certain things in the record are fine. One of them being the Commission clearly said, do you think there was a work accident? Do you think his condition is related? However, we don't base that on Dr. Salehi. We don't think he's the surgeon. He has a condition that they think is related, and they awarded him benefits for it, didn't they? Correct. Yeah. They just didn't think that the condition that required surgery was causally related, because they believed Troy, who said it was nothing more than the natural progression of a degenerative condition. And Salehi was very, very clear. Your client was exaggerating his symptoms. Well, he was just exaggerating. I don't think the arbitrator or the Commission, anyone found that this was a witness that was not credible. His client, again, worked here 20 years. He works there as a truck driver to this day, loyal employee. He only put this at trial. So I don't think any of the Commission or the arbitrator adopted the argument that he was not credible. According to Troy, objectively, there's no objective evidence that there's any induced change in his cervical spine from the accident. Right. It gets interesting, again, with the two defendants being doctors, because one of them says it's a work accident, no surgery, and then Dr. Troy, as you pointed out, said no work accident. No, he didn't say no accident. He didn't say no accident. What he said was there's no causal connection between his current condition and the accident. That's what he said. Well, as quoted, you know, just simply stated, Dr. Troy says, quote, I defer to Dr. Dean to comment on those opinions before plans meet for a multi-element decompression infusion, cervical spine, PH 750, and whatever. I don't think anyone disputes that he needs the operation. You keep dancing around the question of whether it is against the manifest weight of the evidence that the need for the operation is not causally related to the accident. It's our contention, you know, and if you look at the commission's decision, they clearly say there's a work accident. So anything I can get back to you is a work accident. Period. That's one element you've got to establish, okay? Isn't there a real – isn't it a fairly simple case that the commission says, look, the condition of ill-being being experienced by this gentleman is not related to the work accident? Is that what they said? I don't think that's what they said. What the commission said was we think a work accident happened, but based on Dr. Shalaby, we think it's a back strain, go back to work. That's as simple as that. So if we're looking at the elements individually to find a center for a work accident, but they said stop, no surgery, it's a back strain, go back to work. Well, Shalaby, or however you pronounce his name, said, I recommend a course of treatment non-surgical, right? Correct. And it's physical therapy, correct? And he said a functional capacity evaluation, which outlines permanent or restricted. So instead of surgery, he said why don't you do an exam to see if you need to go back to work. And that's in page 3 of the commission's decision. Was that an accurate representation of what Slade said? Yes. Okay. Did he say anything about physical therapy? He said that physical therapy was related. Would he recommend physical therapy? At the point of the exam, he said he has an MRI following the FC, so that would indicate he needs no treatment after the FC. And that's in the commission's decision. But if we go with the case of manifest weight, we provide a case law, two days of work, the injured worker's loss at the commission level, and then this, or reverse that on the manifest weight. If you're at MMI, does that mean there's no need for treatment thereafter? Correct. Okay. And what an FCE is, it's an alternative procedure to a surgery, which says you're not getting the treatment, but we're going to see if you ever go back to work as a truck driver. So what we're always finding here, and the commission avoids some of that, so it's clear that there's indirectly a final decision that there's some injury here. So when we examine how much more is needed for him to prove a surgery, it's clear that if he can't prove he is healthy and the injured worker has hope, he did everything he was supposed to, and he worked, he still works there, he still wants to go back to work. Counsel, a follow-up argument, and the question I have, you seem to be arguing that it's sufficient to get the evidence that the commission could have gotten in favor, but going back to Justice Hudson's question, before the commission determined credibility, it's expert battle. So I understand your argument. So, you know, the commission could have gone the other way. It didn't. So how do we get there? How do we move forward? Well, you know, we're here on certain issues. So if you look at the case and say there's accident and causation proved, I think the case before said with all the other evidence is pointing, it is so overwhelming, you can then overrule the commission. So here, how is it overwhelming? There's a credible plan-up. There's a treating physician saying surgery. There's Dr. Troy who's quoted saying, I defer to Dr. Carr-Allianz on surgery. The arbitrator awarded the surgery. So how many more things are needed? How many more doctors should complain? Can I stop you there? Do you have a case law that says the number of experts on either side determines the outcome? Is that your understanding of the law? Well, the golden case in Montgomery, an elevated case law that we provided, had weaker facts. In this case, there was only a treating physician in one section, and they were in direct conflict. Here, we have two doctors agreeing on surgery. Then we have one doctor saying, no surgery, but he's so bad that he can't do it. Let's assume all of that is true, as you've been saying for the last 15 minutes. At the end of the day, the ultimate test is whether there is sufficient evidence in the record to uphold the commission's decision. Are you telling us there's no evidence in the record in favor of the commission's decision? The case law says, is there a substantial foundation? Or, factually, if the facts are against the manifest way of the evidence. So it says, was there a substantial foundation? Or, if the facts are so overwhelming that it now becomes manifest way. If the case is being put in favor of the commission as such. You'll have time to reply. Counsel, before you leave, can you tell me what page in the record the commission's decision appears? I believe, let's see here. Save your time, it's not there. Page 22. No, I asked the page in your brief. Page two. Page two, the commission's decision appears on page two. Where is it? I'm looking at page two. Where's the commission's decision? You're supposed to have it in the rules required. Well, I'm on page two. There's no commission decision on page two in your brief. Counsel, you didn't put it in there in the rules required. And you didn't put in the arbitrator's decision either. They have to be in the appendix to your brief. I put that in the appendix. What page in the appendix? It says page 477 of the record. Wait a minute. Counsel, it doesn't say you give us a citation to the record. The rule says you have to put the entire decision in the brief, both the arbitrator's decision and the commission's decision. The only thing you put in the brief was an index to the record and a copy of the circuit court's order. If you're going to do these things, we suggest that you follow rules 341 and 342. They're not advisory suggestions. Thank you. Counsel, you may respond. May it please the Court, Counsel, good morning, Your Honors. My name is Christopher Charco. I represent the FLE, U.S.F. Collins. We're here today to ask that you confirm the Eleanor Lewis compensation decision in its entirety, because not only is it supported by sufficient evidence to the record, but in fact, it's supported by ample evidence. Let me ask you this. Counsel, opposing counsel says this is a very simple case. There was an accident, you agree. There was a resulting condition of ill-being, wasn't there? Yes. So therefore, he says he should win the case. What's the difference between sufficient and ample? Well, I believe that sufficient would simply mean that there's some evidence that the commission can rely on. And if that's the case? And if that's the case, it's not a dismantling of the evidence. That's this test, right? That's correct. Okay. So what is that evidence? Well, in this situation, the commission was free to rely on the combined opinions of both Dr. Szilagyi and Dr. Troy. The commission was free to rely on the clear evidence of chronic cervical complications that were resulted from an unrelated fusion in 2006, which led the claimant to regularly and consistently seek follow-up treatment up to and through the October 2011 accident date, as well as the complaints which the commission found to be incredible by the claimant, as noted by Dr. Szilagyi, as well as the five-year gap in any medical treatment since trial date, as well as the unrebutted utilization review completed by Dr. Levy, which is noted in the record as well. So the commission was free to rely on those four points to support this decision. Specifically, Dr. Troy, he doesn't say that – Can you explain to us what a utilization review is? Yes. It's a review by a licensed physician to analyze whether the treatment that's being proposed by its treaters is both reasonable and necessary. And Dr. Levy completed the utilization review and found that it wasn't – that the surgery being recommended was neither reasonable nor necessary, given the fact that there was no radiculopathy noted as well as there's no – the spine wasn't in a condition warranting the proposed surgery. So in essence, the commission reasonably believed the claimant's current condition of well-being was a natural progression of degenerative issues and not the result of the accident, correct? That's correct. And I think it's well supported by the record. I mean, the claimant's treated with Dr. Volosh, his pain management physician, as early as 2008, at which time he underwent injections in May 2008. Underwent additional injections in April 2010. Each time he treated with Dr. Volosh, he recommended additional pain management. Each time he treated with Dr. Volosh, he recommended an MRI so that she could evaluate the ongoing progression of the degenerative condition. In fact, as recently as August 2011, which was just two months prior to the accident, the claimant returned to Dr. Volosh, again was recommended for an updated MRI, had more injections, and in fact the claimant's condition was so debilitated at that point that he even asked Dr. Volosh to complete FMLA paperwork due to his intermittent cervical and low back pain. Dr. Volosh, the treating pain management physician, noted that the claimant had a history of C4-6 cervical fusion with persistent cervicalgia and myofascial pain, and the kicker is no herniation, concern for progression. So as early as August 2011, just two months before his accident date, the claimant had ongoing symptoms, was seeking more restrictions, and it was known that his herniation was progressing. And I'd also like to point out that Dr. Troy, he finds that the claimant doesn't require surgery, and any need for surgery would be unrelated to this October 2011 accident date, and I think it's well supported by the record. I'd also like to point out that all four conditions, Saleki, Troy, Volosh, and Karahalios, all note that Mr. Richard showed signs of symptom magnification. Dr. Volosh indicated that she was suspicious of the claimant's pain complaints. Dr. Karahalios noted that he testified in his deposition on page 440 of the record that for a time that the claimant would exaggerate symptoms while treated with Dr. Karahalios. Saleki notes a number of symptom magnifications as does Troy. It's also noted that the claimant didn't see a physician from July 2012 through the October 2016 accident date. So I think it's quite clear that the commission's decision is well supported by ample evidence and good estimates from the commission's decision in its entirety. Thank you, Counsel. Counsel, you may reply. Thank you. Thank you. In closing, what's the commission's decision denying surgery against the manifest way of the evidence? The treating physician said surgery. Dr. Troy said I defer to Dr. Karahalios on surgery. The arbitrator found surgery. The claimant's legal witness at trial, who has lived here 23 years, still works here today, said he'd like the surgery to return to work. So how much more is needed? If you can't get a surgery here, you're going to go and try to prove that, you know, if this isn't the case, well, we have a workers' compensation act. We provided the case law in your support, and I think us as human beings, we want to see the injured worker get better and return to work. You have the case law, Your Honors, to support it. We've got to say you reversed the commission's decision. We need to take benefits that we arbitrator awarded in that of cervical fusion. Thank you for your time. Thank you, Counsel Borges, for your arguments in this matter. It will be taken under advisement and a written statement.